IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID B. KELMAN, STEVE W. PAPPAS,
and JASON J. RAY,

        Plaintiffs,

                              3:16-CV-1888-PK

v.                                  FINDINGS AND
                                  RECOMMENDATION

EVRAZ, INC. N.A. and JOSHUA STOUT,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiffs David B. Kelman, Steve W. Pappas, and Jason J. Ray filed this employment discrimination action against their former employer Evraz, Inc., N.A. ("Evraz") and its managerial employee Joshua Stout in the Multnomah County Circuit Court on August 24, 2016. By and through their complaint as filed in the Multnomah County court, plaintiffs allege that each of them was employed by Evraz at a steel mill it operated in Multnomah County, and that

Page 1 - FINDINGS AND RECOMMENDATION

while so employed, Stout was their general supervisor. Plaintiffs further allege that each of them was subjected to age discrimination and harassing behavior by Stout while employed by Evraz, and that each of them was discharged by Evraz in whole or in part in retaliation for complaining about such discrimination. In addition, plaintiffs allege that Pappas and Ray reported Stout's unrelated unlawful conduct to Evraz, and that each of them were discharged additionally or alternatively in retaliation for reporting that conduct. Plaintiffs further allege that, prior to his discharge, Ray filed a workers' compensation claim following a workplace injury, and that he was discharged additionally or alternatively in retaliation for filing that claim. Arising out of the foregoing, plaintiffs allege Evraz's liability under Or. Rev. Stat. § 659A.030(1)(f) for improperly terminating each plaintiff's employment in retaliation for reporting Stout's discriminatory conduct, Evraz's liability under Or. Rev. Stat. § 659A.199 for improperly terminating Pappas and Ray's employment in retaliation for reporting Stout's unrelated unlawful conduct, Evraz's liability under Or. Rev. Stat. § 659A.040 for improperly terminating Ray's employment in retaliation for filing a workers' compensation claim, and Stout's liability under Or. Rev. Stat. 659A.030(1)(g) for aiding and abetting all of the conduct underlying plaintiffs' claims against Evraz. Plaintiffs seek award of economic damages in a total amount in excess of $100,000, and non-economic damages in an unspecified total amount equal to or less than $450,000.

  Noting correctly that plaintiffs assert an amount in controversy in excess of $75,000, that plaintiffs Kelman and Pappas are alleged to be residents of Oregon, that plaintiff Ray is alleged to be a resident of Washington, that defendant Evraz is alleged to be a Delaware corporation headquartered in Illinois, and that defendant Stout is alleged to be a resident of Oregon, defendants assert that Stout was fraudulently joined as a defendant in this action and in

Page 2 - FINDINGS AND RECOMMENDATION

consequence should be disregarded for purposes of determining whether this court could properly exercise diversity jurisdiction over plaintiffs' action. On that asserted ground, defendants removed plaintiffs' action to this court effective September 26, 2016, arguing that this court may properly exercise diversity jurisdiction over plaintiffs' claims. Plaintiffs purported to amend their complaint in this court effective October 25, 2016, purportedly clarifying their allegations and making minor changes to their claims (including purported abandonment of their Section 659A(1)(g) aiding and abetting claims against Stout and replacement of those claims with claims against Stout arising under Section 659A.030(1)(f)) and prayer for damages, but without modifying the essential gravamen of their claims.

Now before the court is plaintiffs' motion (#8) for remand of their claims to the Multnomah County Circuit Court. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, plaintiffs' motion (#8) for remand should be granted, and plaintiffs' action should be remanded to the Multnomah County Circuit Court.

## LEGAL STANDARD

Following a defendant or other party's removal of an action from state to federal court, a party opposed to such removal may seek to have the removed case remanded to state court if the district court lacks subject-matter jurisdiction over the action notwithstanding its removal, or if the removing party's removal procedure was defective. *See* 28 U.S.C. § 1447(c). If at any time prior to final judgment it appears that a federal court lacks subject-matter jurisdiction over a removed case, the court must remand the action to state court. *See* 28 U.S.C. § 1447(c). By contrast, where a party seeks remand on the basis of defects in removal procedure, the party

Page 3 - FINDINGS AND RECOMMENDATION

opposed to removal must move for remand within thirty days following removal. *See id.*

The removal statutes are construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *see also, e.g., Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("We strictly construe the removal statute against removal jurisdiction") (citations omitted). Cases first filed in state court and then removed to federal court are consequently subject to a "strong presumption" against finding removal jurisdiction. *See Gaus*, 980 F.2d at 566; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-292 (1938). The burden of establishing federal subject-matter jurisdiction for purposes of removal is on the party seeking removal, *see Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004), *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006), and factual questions regarding the basis for removal are generally to be resolved in favor of remanding the case to state court, *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

In considering a post-removal challenge to federal subject-matter jurisdiction, the court assumes the truth of the allegations in the complaint and that a jury will ultimately return a verdict in the plaintiff's favor on all claims alleged therein. *See, e.g., Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). In addition, the court may consider the contents of the defendant's removal petition, relevant "summary-judgment-type evidence" proffered at the time of removal, and supplemental evidence proffered at the time federal subject-matter jurisdiction is challenged. *Valdez*, 372 F.3d at 1117; *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002). It is well established that "[c]onclusory allegations" or allegations based on "information and belief" are insufficient to satisfy the

Page 4 - FINDINGS AND RECOMMENDATION

defendant's burden to establish federal jurisdiction. *Matheson*, 319 F.3d at 1090-1091; *Valdez*, 372 at 1117. If, after consideration of all material allegations and evidence, "doubt regarding the right to removal exists, [the] case should be remanded to state court." *Matheson*, 319 F.3d at 1090. The propriety of removal, and the question whether a federal court has subject-matter jurisdiction over a removed action, is "determined solely on the basis of the pleadings filed in state court," and "post-removal pleadings have no bearing on whether the removal was proper." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) (citations omitted).

## FACTUAL BACKGROUND

### I.  The Parties

Defendants implicitly take the position, and plaintiffs do not deny, that plaintiffs Kelman and Pappas are citizens of Oregon, and that plaintiff Ray is a citizen of Washington. Defendants offer evidence that defendant Evraz is a Delaware corporation headquartered in Illinois. It appears to be undisputed that defendant Stout is a citizen of Oregon.

Evraz operates a steel mill in Multnomah County, Oregon. Each of the plaintiffs was at material times employed by Evraz at its Multnomah County steel mill. While each plaintiff was so employed, Stout served as Evraz's general supervisor at the steel mill.

### II.  Plaintiffs' Allegations in Support of their Claims[1]

For purposes of the motion now before the court, because the propriety of removal is determined solely on the basis of the parties' pleadings as they stood as of the time removal was effected, *see Williams*, 471 F.3d at 976, I consider herein only the allegations of plaintiffs'

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of plaintiffs' complaint and of defendants' evidentiary proffer in light of the standard governing motions for remand under 28 U.S.C. § 1447.

Page 5 - FINDINGS AND RECOMMENDATION

complaint as originally filed, and not those of plaintiffs' amended complaint.

### A. Allegations Relating to Claims Brought on Behalf of Plaintiff Kelman

Plaintiff Kelman began working for defendant Evraz as a production manager in November 2014. *See* Complaint, ¶ 34. In that capacity, Kelman's direct supervisor was defendant Stout. *See id.*, ¶ 35. Throughout Kelman's employment at Evraz, Stout "continuously" harassed him because of his racial and/or religious heritage (Jewish and Irish) and because of his age (apparently, 41 as of the date he was hired). *See id.*, ¶ 36. Specifically, Stout referred to Kelman using derogatory language referencing his ethnicity and age. *See id.*, ¶¶ 37-39.

On June 1, 2015, Kelman told Stout that his conduct was offensive and requested that he stop. *See id.*, ¶ 40. Stout responded by assigning Kelman work tasks not required of other production managers, with the result that Kelman was required to work longer hours on a daily basis. *See id.* On August 1, 2015, Kelman requested a meeting with Stout to discuss the additional tasks he had been assigned. *See id.*, ¶ 41. On August 5, 2015, Stout suspended Kelman's employment pending an investigation. *See id.*, ¶ 42. Evraz terminated Kelman's employment on August 14, 2015. *See id.*, ¶ 43.

It is Kelman's position that Evraz terminated his employment in violation of Or. Rev. Stat. § 659A.030(1)(f) in retaliation for having complained about the discriminatory harassment he suffered at Stout's hands, and that Stout violated Or. Rev. Stat. § 659A.030(1)(g) by aiding and abetting Evraz' retaliatory termination of his employment. *See id.*, ¶ 49.

### B. Allegations Relating to Claims Brought on Behalf of Plaintiff Pappas

Plaintiff Pappas began working for defendant Evraz as a technician in April 2007. *See* Complaint, ¶ 23. Pappas continued thereafter to work for Evraz as a visual inspector, a leadman,

Page 6 - FINDINGS AND RECOMMENDATION

a production supervisor, and a quality control supervisor, *see id.*, ¶ 24, other than, apparently, the period from an unspecified month in 2009 through February 2013, when the mill was closed and all employees were temporarily laid off, *see id.*, ¶¶ 8-9. In September 2014, when Pappas was employed by Evraz as a quality control supervisor, he (together with plaintiff Ray and others) observed defendant Stout loading steel plate onto his personal truck. *See id.*, ¶ 25. Pappas advised Stout that he was violating Evraz policy by so doing, but Stout ignored that warning. *See id.*, ¶ 25. Pappas thereafter reported Stout's conduct to Evraz human resources personnel. *See id.*

Following that incident, but perhaps also preceding it, Stout began referring to Pappas through derogatory language referencing his apparently advanced (but unspecified) age. *See id.*, ¶¶ 16, 26, 27. In spring 2014, Stout transferred Pappas to a shipping department outside the mill, referring to the move as "sending the old guy[] out to pasture." *Id.*

In December 2014, Pappas complained about Stout's discriminatory harassment to Evraz human resources personnel. *See id.*, ¶ 28. Evraz responded to the complaint by transferring Pappas laterally to a different department where his skills and experience in his old position(s) were irrelevant. *See id.*, ¶¶ 29-30. Soon thereafter, Evraz transferred Pappas back to Stout's supervision. *See id.*, ¶ 31. Stout's discriminatory harassment of Pappas increased following the transfer. *See id.*

Pappas complained about Stout's conduct again in August or September 2015. *See id.*, ¶ 32. It appears that Pappas may have been transferred temporarily to a new department and then back again to his position under Stout. *See id.*, ¶ 33. It appears that Pappas may have complained about Stout's conduct on one further occasion thereafter. *See id.* Evraz terminated Pappas' employment in February 2016. *See id.*

Page 7 - FINDINGS AND RECOMMENDATION

It is Pappas' position that Evraz terminated his employment in violation of Or. Rev. Stat. § 659A.030(1)(f) in retaliation for having complained about the discriminatory harassment he suffered at Stout's hands and/or in violation of Or. Rev. Stat. § 659A.199 in retaliation for having reported Stout's conduct in taking steel plates from the workplace, and that Stout violated Or. Rev. Stat. § 659A.030(1)(g) by aiding and abetting Evraz' retaliatory termination of his employment. *See id.*, ¶¶ 47-48.

### C. Allegations Relating to Claims Brought on Behalf of Plaintiff Ray

Plaintiff Ray began working for defendant Evraz as a floor production worker in December 2007. *See* Complaint, ¶ 7. It appears that the mill was closed and all Evraz's employees were temporarily laid off during the period from an unspecified month in 2009 through February 2013. *See id.*, ¶¶ 8-9. In February 2013, Ray was rehired as a crew lead. *See id.*, ¶ 9. In June or July 2013, Ray was transferred to the night crew, and in August or September 2013, he was promoted to night crew supervisor. *See id.*, ¶¶ 10-11. In spring 2014, Stout transferred Ray to a department outside the mill, referring to the move as "sending the old guy[] out to pasture." *Id.*, ¶ 12.

In May 2014, Ray fell down in the workplace and injured his knee. *See id.*, ¶ 13. Ray filed a workers' compensation claim in connection with his knee injury. *See id.*, ¶ 14. Stout expressly chastised Ray for filing the claim. *See id.*, ¶ 15. Stout mocked Ray for having suffered his knee injury, and referred to him through derogatory language referencing his apparently advanced (but unspecified) age. *See id.*, ¶¶ 15-16. In fall 2014, Ray complained about Stout's behavior to Evraz management. *See id.*, ¶ 17.

In September 2014, Ray (together with plaintiff Pappas and others) observed defendant

Page 8 - FINDINGS AND RECOMMENDATION

Stout loading steel plate onto his personal truck. *See id.*, ¶ 18. Ray thereafter reported Stout's conduct to Evraz. *See id.*, ¶ 19.

Evraz suspended Ray's employment on November 5, 2014. *See id.*, ¶ 20. Evraz formally terminated Ray's employment effective November 20, 2014. *See id.* Evraz "then induced Ray to sign a severance and release agreement through the use of false statements" in "violat[ion of] the federal Older Workers Benefit Protection Act," 29 U.S.C. § 623 *et seq. Id.*, ¶¶ 21-22.

It is Ray's position that Evraz terminated his employment in violation of Or. Rev. Stat. § 659A.030(1)(f) in retaliation for having complained about the discriminatory harassment he suffered at Stout's hands, in violation of Or. Rev. Stat. § 659A.199 in retaliation for having reported Stout's conduct in taking steel plates from the workplace, and/or in violation of Or. Rev. Stat. § 659A.040 in retaliation for having filed a workers' compensation claim, and that Stout violated Or. Rev. Stat. § 659A.030(1)(g) by aiding and abetting Evraz' retaliatory termination of his employment. *See id.*, ¶¶ 44-46.

## ANALYSIS

As noted above, it is defendants' position that Stout was fraudulently joined as a defendant in this action, in that it is purportedly "obvious" on the face of plaintiffs' complaint that plaintiffs can state no cause of action against Stout on the basis of the complained-of conduct. The parties are tacitly in agreement that if Stout was *not* fraudulently joined by and through plaintiffs' originally filed complaint, his presence as a defendant forecloses the exercise of diversity jurisdiction over plaintiffs' claims, such that this court lacks subject-matter jurisdiction over this action, which in consequence must be remanded to the Multnomah County Circuit Court.

Ordinarily, the federal courts lack diversity jurisdiction over civil actions between non-governmental entities where there is not complete diversity among the parties. *See* 28 U.S.C. § 1332(a). However, a non-diverse defendant may properly be disregarded for purposes of diversity jurisdiction where the non-diverse defendant's joinder was fraudulent.[2] *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citations omitted). Joinder of a non-diverse defendant is deemed fraudulent where the plaintiff's complaint fails to state a cause of action against that defendant, "and the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Although it does not appear that the Court of Appeals for the Ninth Circuit has provided significant guidance as to the meaning of the term "obvious" in that context, the district courts of the Ninth Circuit have interpreted it to mean that a party seeking to establish diversity jurisdiction notwithstanding the presence of a non-diverse defendant bears the burden to "demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998), *citing Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

A "removing defendant's burden of demonstrating that the non-diverse defendant's joinder is a 'sham' is a heavy one." *Archuleta v. Am. Airlines, Inc.*, Case No. CV 00-1286 MMM, 2000 U.S. Dist. LEXIS 21076, *16 (C.D. Cal. May 8, 2000), *citing Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815-816 (5th Cir. 1993), *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1984). "In determining

---

[2] In this context, "fraudulent" is a term of art, and does not suggest intent to deceive or any other improper motive. *See, e.g., McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

Page 10 - FINDINGS AND RECOMMENDATION

whether a non-diverse defendant's joinder is fraudulent, the court must resolve all disputed questions of fact, and all ambiguities in the controlling state law, in favor of the non-removing party." *Id.*, *citing Dodson*, 951 F.2d at 42-43, *Good*, 5 F. Supp. 2d at 807. "All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand," *id.*, *citing Gaus v. Miles, Inc.*, 980 F.2d 564, 566-567 (9th Cir. 1992), "and a lack of clear precedent does not render the joinder fraudulent," *id.* at 16-17, *citing Lieberman v. Meshkin, Mazandarani*, Case No. C-96-3344 SI, 1996 U.S. Dist. LEXIS 18689, *9 (N.D. Cal. Dec. 9, 1996). If after resolving all disputed questions of fact, all ambiguities in state law, and all doubts arising out of inartful or techincally defective pleading in the favor of the party opposing removal "if there is even a possibility that plaintiff may prevail, remand is warranted." *Id.* at *17, *citing Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) ("[t]he removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court . . .").

Here, each of plaintiffs' claims alleged against Stout arises under Or. Rev. Stat. § 659A.030(1)(g). Section 659A.030(1)(g) provides that "[i]t is an unlawful employment practice. . . [f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under . . . chapter [659A] or to attempt to do so." Or. Rev. Stat. § 659A.030(1)(g).

The acts forbidden under Chapter 659A that plaintiffs allege Stout aided and abetted are (i) Evraz's termination of each of the three plaintiffs in retaliation for having complained about the discriminatory harassment he suffered at Stout's hands (forbidden under Or. Rev. Stat.

Page 11 - FINDINGS AND RECOMMENDATION

§ 659A.030(1)(f)), (ii) Evraz's termination of Pappas and/or of Ray in retaliation for having reported Stout's conduct in taking steel plates from the workplace (forbidden under Or. Rev. Stat. § 659A.199), and/or (iii) Evraz's termination of Ray in retaliation for having filed a workers' compensation claim (forbidden under Or. Rev. Stat. § 659A.040).

Section 659A.030(1)(f) provides that "[i]t is an unlawful employment practice. . . [f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice. . . ." Or. Rev. Stat. § 659A.030(1)\(f).

Section 659A.040 provides in relevant part as follows:

> It is an unlawful employment practice for an employer [of more than six persons] to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 [governing workers' compensation]. . . .

Or. Rev. Stat. § 659A.040(1).

Section 659A.199 provides in relevant part as follows:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

Or. Rev. Stat. § 659A.199(1).

It is clear from plaintiffs' moving papers and reply memorandum in support of their motion that plaintiffs' motion for remand is expressly argued on the ground that their *amended complaint* states valid claims against Stout, rather than on the ground that the *complaint as it existed at the time removal was effected* stated claims against Stout in connection with which

there was a possibility that plaintiffs might prevail, such that Stout was not fraudulently joined as a defendant in connection with the originally filed complaint. The court need not, however, consider whether plaintiffs' proffered arguments constitute waiver of the argument that this court lacked subject-matter jurisdiction over this action as of the time removal was effective, because (as is well established), defects in federal subject-matter jurisdiction are simply not subject to waiver or forfeiture. *See, e.g., United States v. Castillo*, 496 F.3d 947, 952 (9th Cir. 2007).

Defendants' argument that Stout was fraudulently joined as a defendant in connection with plaintiffs' complaint as originally filed is, effectively, that plaintiffs' complaint purportedly identifies Stout as the "primary bad actor" in connection with the age-motivated discrimination and harassment plaintiffs allege they suffered while employed at Evraz, and that it is not coherent to allege Stout's liability for aiding and abetting his own conduct. However, plaintiffs do not allege Evraz' liability for age-motivated discrimination or for permitting Stout to subject plaintiffs to harassing behavior or a hostile work environment, but rather for terminating each plaintiff's employment in retaliation for complaining about Stout's discriminatory/harassing behavior, for reporting Stout's unrelated unlawful behavior, and/or for filing a workers' compensation claim. It is not his own conduct that Stout is alleged to have aided or abetted, but rather Evraz' retaliatory termination of each plaintiff that he is alleged to have aided or abetted. There is nothing incoherent about that legal theory, and if it were established that Stout materially aided or abetted Evraz in reaching the decision to effect plaintiffs' terminations for retaliatory reasons, that conduct would be actionable under Oregon law. *See* Or. Rev. Stat. § 659A.030(1)(g).

I note that plaintiffs failed to allege what particular conduct of Stout's constituted aiding

Page 13 - FINDINGS AND RECOMMENDATION

or abetting Evraz in effecting plaintiffs' retaliatory termination. Due to that failure, if this court had subject-matter jurisdiction over this action and were called upon to determine the adequacy of plaintiffs' allegations to state a Section 659A.030(1)(g) claim against Stout, it is probable that the claim would not survive scrutiny under Federal Civil Procedure Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 433, 555, 556 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). However, the question whether a defendant is fraudulently joined to an action so as to defeat exercise of diversity jurisdiction is not co-extensive with the question whether a complaint fails to state a valid claim against that defendant; to the contrary, as the case law discussed above establishes, the fraudulent joinder question depends on whether no claim could lie against that defendant in state court. *See, e.g., Archuleta,* 2000 U.S. Dist. LEXIS 21076 at *16-17. Trivial amendment of plaintiffs' complaint to allege conduct constituting aiding or abetting Evraz in reaching the decision to terminate plaintiffs' termination for retaliatory reasons would be sufficient for plaintiffs to state a valid Section 659A.030(1)(g) claim against Stout, and there is no evidence of record to suggest that plaintiffs would be unable so to amend their pleading. Because there is a possibility that plaintiffs could prevail in connection with one or more of their originally alleged Section 659A.030(1)(g) claims against Stout, this court lacked diversity jurisdiction over this action as of the time removal was effected. It follows that this case must be remanded to the Multnomah County court. Moreover, because this court has at no time had subject-matter jurisdiction over this action, all documents filed by the parties before this court are procedural nullities without legal effect, including plaintiffs' purported amended complaint. It is plaintiffs' claims as stated in their originally filed complaint that are subject to remand to state court.

Page 14 - FINDINGS AND RECOMMENDATION

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#8) for remand should be granted, and this action should be remanded to the Multnomah County Circuit Court.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 19th day of December, 2016.

Honorable Paul Papak
United States Magistrate Judge